IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3168-FL

| | |
|---|---|
| ANTOINE LAMONT HUMPHREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WARDEN SARA REVELL, CAPTAIN ) | |
| M. DOYLE, S.I.S. LIEUTENANT ) | |
| BARNES, S.I.S. LIEUTENANT ) | |
| BOSTON, UNIT MANAGER L. ) | |
| LINDSLEY, COUNSELOR E. ) | |
| MARTINEZ, and OFFICER WOMACK, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on defendants' motion to dismiss, or in the alternative, for summary judgment.[1] (DE 40). Plaintiff did not respond to defendants' motion. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

On September 7, 2011, plaintiff filed this action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). On June 16, 2012, the court conducted an initial review of plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(b), and directed plaintiff to particularize his claims. Plaintiff filed his amended complaint on September 28, 2012.

---

[1] Because defendants attached documents that are outside of the pleadings, defendants' motion will be construed, in part, as a motion for summary judgment.

In his amended complaint, plaintiff alleges the following claims: (1) defendant Captain M. Doyle ("Doyle") violated his constitutional rights by engaging in slanderous and threatening language; (2) defendants Doyle, Lieutenant Barnes ("Barnes"), L. Lindsley ("Lindsley"), E. Martinez ("Martinez"), and Officer Womack ("Womack") retaliated against him for filing administrative tort claims and grievances; (3) Lindsley violated his constitutional rights when she placed plaintiff on commissary restriction in response to his refusal to repay federal student aid debt; (4) defendants denied him access to courts; (5) defendant Sara Revell ("Revell") failed to protect him because she failed to enforce Bureau of Prisons ("BOP") policies and procedures relating to his complaints about staff retaliation. In addition to the above-stated retaliation claim, plaintiff alleges retaliatory conduct including pat and strip searches, placement in the Special Housing Unit ("SHU"), slanderous and libelous comments from staff, being sprayed with pepper-spray, and refusal to process grievances.

As relief, plaintiff seeks transfer to the Federal Prison Camp in Petersburg, Virginia, disciplinary suspension of defendants, and monetary damages. Plaintiff also requests that the government repay student aid Pell Grant money that he was awarded.

On October 16, 2012, the court allowed plaintiff to proceed with the action. On April 17, 2013, defendants filed a motion to dismiss, or in the alternative, for summary judgment. Defendants argue that they are entitled to summary judgment on plaintiff's claims arising out of the use of pepper-spray and subsequent denial of medical care because plaintiff failed to exhaust his administrative remedies. Defendants also argue that they are entitled to summary judgment on plaintiff's claim that prison officials wrongfully collected his funds to repay his Pell Grant. As for

2

plaintiff's remaining claims, defendants move to dismiss these claims for failure to state a claim upon which relief may be granted.

On April 29, 2013, plaintiff notified the court that he would be released from custody on May 14, 2013. Although he was provided two extensions of time, plaintiff failed to respond to the pending motion to dismiss, or in the alternative, for summary judgment.

## STATEMENT OF FACTS

A.  Claims subject to motion to dismiss

For purposes of those claims for which defendants seek dismissal as a matter of law, under Rule 12(b)(6), the facts alleged in the complaint may be summarized as follows. Plaintiff was incarcerated at the Federal Medical Center in Butner, North Carolina when this cause of action arose. (Am. Compl. p. 2). On August 24, 2009, plaintiff received financial aid in the form of a Pell Grant from the United States Department of Education. (Id.). The "grant was solicited to the general population at FMC-Butner, but [plaintiff] was singled out for student aid fraud." (Id.).

On the date plaintiff received the Pell Grant, defendant Doyle interrupted an interview between defendant Boston and plaintiff, and made the following remarks: "I'm going to prosecute you for fraud"; " This is the Con-Artist"; and "How long did you think you was going to get away with it, Madoff Jr." (Id.). Defendant Doyle labeled plaintiff a "fraudster." (Id.). Then, on December 23, 2010, defendant Doyle "decided to get aggressive with his slanderous comments" and stated "[y]ou know your (sic) going to die in federal prison." (Id.).

On May 31, 2011, defendant Martinez advised plaintiff that she had lost or misplaced an administrative remedy request that plaintiff had filed against defendant Doyle for communicating

3

threats. (Id. p. 4). Defendant Martinez advised plaintiff to re-file his administrative remedy request. (Id.).	On May 25, 2011, defendant Womack searched plaintiff at 11:05 a.m.

> with a handheld metal detector entering the kitchen, exiting the kitchen (5 min later) I was pat searched by [defendant] Doyle, he asked, where is the knife (shank)? Then he inquired about the tort claim [plaintiff] filed against him for personal injury ($150,000.00) and that it would be in [his] best interest to drop this claim! He offered in exchange for a transfer to another institution closer to my family in Texas or Oklahoma, but I had to first drop the tort claim.[2]

(Id. pp. 2-3). Defendant Doyle then spoke with the unit team members regarding plaintiff's transfer in exchange for the dismissal of plaintiff's administrative tort claim. (Id.).

On June 14, 2011, Lieutenant Barbee and defendant Barnes offered plaintiff contraband in exchange for the dismissal of another administrative tort claim which involved the loss of personal property. (Id. p. 3). Plaintiff was offered United States postage stamps and a pair of sneakers to settle his property-related administrative tort claim totaling one thousand one hundred eight dollars and thirty-one cents ($1,108.37). Plaintiff notified internal affairs of this incident. (Id.).

On July 22, 2011, defendant Doyle "proceeded to intimidate[] and threaten[] [plaintiff] for filing a complaint with the Warden ([defendant] Sara Revell), notifying her of the Captain[']s behavior: harassment, threats, and bribery." (Id.). Defendant Doyle informed plaintiff that if he continued to file complaints of threats, that plaintiff would be experiencing consequences. (Id.). Internal affairs investigated plaintiff's allegations on August 18, 2011. (Id.). On August 23, 2011, prison officials placed plaintiff in the SHU under administrative investigation for filing complaints against defendant Doyle. (Id. p. 4).

---

[2] In his original complaint filed on September 7, 2011, plaintiff states that Barnes strip searched him on December 23, 2010. (Compl. p. 3). This allegation does not appear in plaintiff's amended complaint.

4

On September 8, 2011, correctional officer Wright pepper-sprayed plaintiff because plaintiff filed complaints against defendant Doyle. (Id.). Plaintiff subsequently was denied medical treatment for his asthma by the staff in the SHU. (Id.). Plaintiff states that he has upper respiratory problems and should not have been exposed to pepper-spray. (Id.).

On September 23, 2011, plaintiff filed an administrative remedy against defendant Womack for "stealing and giving [his] personal property to other inmates, instead of securing, inventorying, and transferring [his] property to the [SHU]." (Id.).

Finally, defendant Lindsley forced plaintiff to repay the Pell Grant, which was not part of plaintiff's court assessment or fine. (Id. p. 5). Prison officials then placed plaintiff on commissary restriction for a period of one year for refusing to accept another contract for debt that was not part of his immediate charge or court order. (Id.). Plaintiff states that he was denied all privileges by his unit team members for not accepting responsibility for a debt prison officials imposed upon him. (Id.).

B.  Undisputed facts pertinent to claims subject to summary judgment disposition

For purposes of those claims for which defendants seek summary judgment, including on the basis of materials submitted outside the pleadings, the undisputed facts may be summarized as follows. On September 21, 2010, plaintiff filed a grievance regarding his Pell Grant. (Coll Decl.[3] ¶ 9). In response, defendant Revell stated that plaintiff received a disbursement of two thousand three hundred sixty-six dollars ($2,366.00) posted to his inmate account from Vance-Granville Community College in the form of a Pell Grant installment. (Id. and Attach. 2).

---

[3] Defendants submitted a declaration of Cornelia J. Coll a Paralegal Specialist at the Federal Correctional Complex in Butner, North Carolina in support of defendants' motion for summary judgment. (Coll Decl. ¶ 1.)

5

Defendant Revell informed plaintiff that BOP policy states: "Individuals incarcerated in federal correctional facilities are ineligible for college financial aid in the form of Federal Pell Grants." (Id.). Revell further noted that plaintiff submitted an inmate request to staff member form dated August 13, 2010, wherein plaintiff "acknowledged 'I have a morale (sic) obligation for a debt that I was solicited to by FMC-Education Dept. of $2366. Therefore I will (sic) like to extinguish this debt by making monthly payment of thirty ($30) dollars on the 10th of every month." (Id.). Revell informed plaintiff that the proposed repayment plan was acceptable. (Id.).

On October 20, 2011, plaintiff filed an administrative remedy request relating to the September 8, 2011, pepper-spraying incident with the Regional Director. (Id. ¶ 8 and Attach. 1). However, this administrative remedy request was rejected because plaintiff did not comply with BOP policy by first filing his administrative remedy request with the Warden, before filing his appeal to the Regional Director. (Id.). Plaintiff did not re-file his administrative remedy request at the institutional level, nor did he appeal the rejection. (Id.).

## DISCUSSION

A. Standard of Review

    1. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled

6

facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotations omitted).

    2. Summary Judgment

A party may move for summary judgment on an individual claim or defense, or any part thereof. See Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

   1.   Pepper-spray and medical care claims

Defendants move for summary judgment on plaintiff's claims arising out of the alleged September 8, 2011, pepper-spray incident and subsequent denial of medical care, on the basis that plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Jones v. Bock, 549 U.S. 199, 216 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005); Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677; Cofield v. Bowser, 247 F. App'x 413, 414 ("[I]t is the plaintiff's status at the time he filed the lawsuit that is determinative as to whether the § 1997e(a) exhaustion requirement applies."); Chase v. Peay, 286 F. Supp. 2d 523, 527-28 (D. Md. 2003) (finding that the PLRA's exhaustion requirement applies regardless of whether an inmate was released subsequent to filing the action). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The BOP provides a four-step administrative remedy procedure. The first step in the process requires an inmate to present his issue to staff in an attempt at informal resolution. See 28 C.F.R. § 542.13. If informal resolution is unsuccessful, an inmate may submit a formal written

8

administrative remedy request to the warden using a BP-9 form. See 28 C.F.R. § 542.14. If an inmate is dissatisfied with the warden's response, he then may appeal to the BOP's regional director, using a BP-10 form, and then to the BOP's General Counsel, using a BP-11 form. See 28 C.F.R. § 542.15.

Defendants presented evidence that plaintiff failed to exhaust his administrative remedies for his claims arising out of being pepper sprayed on September 8, 2011, and subsequent alleged denial of medical care. See Coll Decl. ¶ 8. Plaintiff does not dispute that he failed to exhaust his administrative remedies for these claims or allege any specific facts reflecting that any prison official prevented him from exhausting this claim.[4] Based upon the foregoing, the court will grant defendants motion for summary judgment as to these claims arising out the alleged pepper-spray incident on September 8, 2011, and subsequent denial of medical care. Where judgment is based upon failure to exhaust administrative remedies, dismissal of these claims is without prejudice. See Miles v. Wells, 132 F. App'x 457, 458 (4th Cir. 2005); Jathan v. Johns, 5:12-HC-2089-FL, 2013 WL 1347872 *2 (E.D.N.C. Apr. 3, 2013).

2. Repayment of Pell Grant

Defendants contend that they are entitled to summary judgment on plaintiff's claim that the BOP wrongfully collected his funds to repay the Pell Grant. The record reflects that plaintiff acknowledged that he had an obligation to repay the Pell Grant and agreed to a payment plan. (See

---

[4] Although plaintiff generally alleges that prison officials interfered with his attempts to file grievances on occasion, plaintiff does not provide sufficient facts to support a finding that prison officials interfered with his ability to exhaust his administrative remedies for this claim. Cf. Hill v. Haynes, 380 F. App'x 268, 273 (4th Cir. 2010) (finding genuine issues of material fact where plaintiff provided specific and detailed allegations regarding defendants' hindering his ability to exhaust); see Goodwin v. Beasley, No. 1:09-CV-151, 2011 WL 835937, at *3 (M.D.N.C. Mar. 3, 2011).

9

Coll Decl. ¶ 9 and Attach. 2). Plaintiff has not submitted any evidence to the contrary, and has thus failed to affirmatively demonstrate that there exists a genuine issue of material fact requiring trial as to this claim. See Matsushita, 475 U.S. at 587. Thus, defendants are entitled to summary judgment for this claim.

Plaintiff additionally states that due to his failure to repay the student aid, Lindsley placed him on a one-year commissary restriction. However, inmates do not have a constitutional right to be able to purchase items from the commissary. See Winston v. Fed. Bureau of Prisons, 5:10-HC-2192-FL, 2011 WL 3664416 *3 (E.D.N.C. Aug. 18, 2011); see also Cato v. Watson, 212 F. App'x 258, 259-60 (5th Cir. 2006) (stating that inmates do not have a liberty interest in commissary privileges); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) (noting "no constitutional right of access to a prison gift or snack shop"). Thus, defendants are entitled to summary judgment for this portion of plaintiff's claim, where plaintiff has failed to demonstrate a genuine issue of material fact, and defendant's are entitled to judgment as a matter of law.

3.  Slander and Verbal Threats

Defendants move to dismiss as a matter of law plaintiff's claims relating to slander and verbal threats. To the extent plaintiff attempts to allege a claim for slander against defendant Doyle, or any other defendant, his claim is meritless because an inmate may not maintain a claim for slander pursuant to Bivens. See Solomon v. Dixon, 724 F. Supp. 1193, 1197 (E.D.N.C. 1989) aff'd, 904 F.2d 701 (4th Cir. 1990) ("[S]lander or defamation does not constitute a basis upon which relief may be granted under § 1983."); Fleming v. West Virginia, No. 5:08CV267, 2009 WL 960217, at *3 (S.D.W. Va. Apr. 7, 2009) ("Section 1983 provides for violations of rights, privileges, or immunities secured by the Constitution and laws of the United States . . . . Plaintiff's claim that Defendants

defamed his character fails to allege a violation of a federally protected right.") (internal citations and quotations omitted).

To the extent plaintiff seeks to state a claim against Doyle arising out of alleged threatening language, this claim too fails. The law is clear that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." Morrison v. Martin, 755 F. Supp. 683, 687 (E.D.N.C. 1990) (quotations omitted), aff'd, 917 F.2d 1302 (4th Cir. 1990); see, e.g., Harris v. Green, No. DKC-12-434, 2013 WL 718868, at *4 (D. Md. Feb. 26, 2013) (finding verbal abuse of pretrial detainee did not constitute a constitutional violation); Capers v. Preston, No. 3:10CV225-MU02, 2010 WL 2015274, at *2 (W.D.N.C. May 19, 2010) (same); Emmons v. McLaughlin, 874 F.2d 351, 353-354 (6th Cir. 1983) (finding that verbal threats causing fear for plaintiff's life is not an infringement of a constitutional right). Because plaintiff merely alleges threatening language, the court finds he fails to state a Bivens claim.

4. Retaliation

Defendants also move to dismiss plaintiff's retaliation claims as a matter of law. The court begins with plaintiff's claim that defendants retaliated against him for filing administrative tort claims and grievances. Claims of retaliation are treated with skepticism in the prison context. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). This is "because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Id. (internal quotations omitted).

Accordingly, for an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Id. at 1318 (noting that to state a claim for

11

retaliation, an inmate must show that "each retaliatory act violate[d] some constitutional right of an inmate or constitute[d] punishment for the exercise of a constitutional right"); see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74-75. Finally, a plaintiff must show that he "suffered some adversity in response to [his] exercise of protected rights." American Civil Liberties Union of Maryland, Inc. v. Wicomico County Md., 999 F.2d 780, 785 (4th Cir. 1993).

To the extent plaintiff alleges defendants retaliated against him for filing grievances or that defendants failed to process grievances in retaliation for filing administrative tort claims, such claims fail because inmates do not have a constitutional right to participate in a grievance procedure. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). Thus, plaintiff failed to state a claim upon which relief may be granted on this basis.

The court now turns to plaintiff's claim that defendants conducted pat and strip searches in retaliation for filing administrative tort claims. Plaintiff, in support of his claim, asserts that he was strip searched on December 23, 2010, by defendant Barnes. Plaintiff also asserts that, on May 25, 2011, defendant Womack searched him using a hand-held metal detector as he was entering the kitchen, and that defendant Doyle conducted a pat search as plaintiff exited the kitchen. After the pat search, defendant Doyle inquired about a tort claim plaintiff had filed and told plaintiff that it would be in his best interest to drop the claim in exchange for a transfer to an institution closer to his family.

These alleged facts are not sufficient under the standard in this circuit to connect the alleged searches to the filing of his administrative tort claims. Adams, 40 F.3d at 74 (stating that conclusory

12

allegations of retaliation fail to state a claim pursuant to § 1983); see Gill v. Mooney, 824 F.2d 192, 194 (2nd Cir.1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir.1983)). Plaintiff further does not state that the searches were conducted in contradiction to BOP policy or that he was harmed by the searches. See American Civil Liberties Union of Maryland, Inc., 999 F.2d at 785. Based upon the foregoing, the court finds that plaintiff fails to state a claim for retaliation based upon pat searches.

The court next turns to plaintiff's contention that he was "placed in the SHU under Administrative Investigation for filing complaints against the Captain." (Am. Compl., p. 4.). However, as stated, inmates do not have a constitutional right to participate in a grievance procedure. Daye, 417 F. App'x at 319. Nor has plaintiff provided sufficient factual allegations in support for this claim. Adams, 40 F.3d at 74-75. Thus, plaintiff failed to state a constitutional claim.

Finally, to the extent plaintiff alleges a claim for retaliation arising out of Doyle's alleged slander or verbal threats, this claim too fails because, as stated above, plaintiff failed to allege that this conduct violated the Constitution. In sum, plaintiff fails to state an actionable claim for retaliation.

5. Access to Courts

Plaintiff alleges that he was offered a transfer, contraband, United States Postage Stamps, and a pair of sneakers to terminate his administrative tort claim. With this claim, plaintiff appears to allege that he was denied access to courts. In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–52 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006). The Supreme Court held in Lewis that inmates must be

13

provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis, 518 U.S. at 351 (quotation omitted). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. The Court did not extend the holding to include the right to "litigate effectively once in court." Id. at 354 (disclaiming language in Bounds v. Smith, 430 U.S. 817, 825 (1977), suggesting otherwise).

Here, plaintiff has not alleged that a nonfrivolous legal claim had been frustrated or impeded. Thus, to the extent he alleges he was denied access to the courts, he has failed to state a claim.

6. Supervisor Liability

Defendants move to dismiss plaintiff's supervisor liability claim against defendant Revell. In support of his supervisor liability claim, plaintiff alleges that defendant Revell "fail[ed] to address [his] complaints, nor answer [his] request about the ordeal [he] was experiencing with staff." (Am. Compl. p. 5). A supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Case 5:11-ct-03168-FL   Document 55   Filed 03/19/14   Page 14 of 15

Plaintiff, in his amended complaint, admits that internal affairs conducted an investigation into his complaints about harassment, intimidation, bribery, and the communication of threats. (Am. Compl. p. 3; DE 16, p. 3)). Accordingly, plaintiff's own allegations refute his contention that defendant Revell refused to address his complaints about the staff. The court, additionally, finds that plaintiff failed to provide facts to establish any of the elements to establish a supervisor liability claim. Thus, plaintiff failed to state a supervisor liability claim against defendant Revell.

7. Conclusory Allegations

Plaintiff makes conclusory allegations that prison officials lost his personal property or interfered with his mail. Plaintiff, however, has failed to provide any factual allegations to support these claims, and they must therefore be dismissed without prejudice. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (dismissing complaint because it "failed to contain any factual allegations tending to support [plaintiff's] bare assertions"). Finally, to the extent there remains any additional allegations which could be construed as additional claims, such claims must also be dismissed without prejudice as conclusory.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to dismiss and for summary judgment (DE 40). Plaintiff's claims for which he failed to exhaust administrative remedies, and those claims based on conclusory allegations, are DISMISSED without prejudice. All remaining claims are DISMISSED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 19th day of March, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

15
Case 5:11-ct-03168-FL   Document 55   Filed 03/19/14   Page 15 of 15